## AMERICAN SAFETY RAZOR CORPORATION v. FRINGS BROS. CO.

### No. 6407.

District Court, E. D. Pennsylvania.

Sept. 23, 1931.

Charles H. Howson (of Howson & Howson), of Philadelphia, Pa., and Samuel E. Darby, Jr. (of Darby & Darby), and William S. Gluck, both of New York City, for plaintiff.

Boyd Lee Spahr (of Ballard, Spahr, Andrews & Ingersoll), of Philadelphia, Pa., and W. Brown Morton, George Middleton, and Pennie, Davis, Marvin & Edmonds, all of New York City, for defendant.

KIRKPATRICK, District Judge.

This is a suit for infringement of two patents—Behrman, No. 1,739,280 December 10, 1929, and Dalkowitz No. 1,773,614, August 19, 1930—both for safety razors. Of the claims in issue, Behrman claims 1 and 2 and Dalkowitz claims 26, 27, 33, and 34 are for the combination of razor frame and blade, and, for reasons which will appear, need not be considered at length. The remaining claims in issue, Behrman claims 5, 10, 11, and 12, are for the blade alone.

Claim 11 of the Behrman patent, selected by the plaintiff as typical, and arranged for convenience is as follows:

"A razor blade comprising

"(1) A shaving edge having stop engaging corners adapted to contact with front gauge stops of a razor,

"(2) A plurality of slots

"(a) Directed inwardly from the sides and

"(b) Arranged abreast in the central zone of the blade and

"(c) Presenting abutment portions adapted to be engaged and forwardly pressed to bring said stop engaging corners against said front gauge stops, and

"(3) An intermediate positioning slot

- "(a) Arranged in laterally overlapping relation with reference to the aforementioned positioning slots, and

"(b) Adapted to position the blade for said forward movement."

### Findings of Fact.

1. The real defendant is Standard Safety Razor Corporation, a Delaware corporation. It will be referred to herein as "the defendant."

2. The defendant manufactures and sells blades for safety razors, but does not manufacture or sell any razor frames.

3. The blade manufactured by the defendant is in all respects the blade of claims 5, 10, 11, and 12 of the Behrman patent, and, if these claims are valid, infringes them. It is also the blade of the combination claims of the Behrman and Dalkowitz patents in issue.

Comment: So far as it has any function, I regard the central circular hole in the defendant's blade as the equivalent of the "intermediate positioning slot" of the Behrman patent. As a matter of fact both seem to me to be almost entirely nonfunctional. In the Behrman patent the blade can be held loosely in preliminary position on the saddle, in an entirely satisfactory manner and without manual assistance, by the sides of the cover and the stops on the guard. Just why it and the central lug were put into that patent is not easy to say, though the defendant's suggestion that it was done to prevent the blades formerly put out by the plaintiff from being used with its new razor may not be so far from the truth. In the defendant's blade its main utility is to make it fit the saddle of the plaintiff's frame.

4. The defendant sells blades manufactured by it to legitimate owners of "Gem Micromatic" razors manufactured and sold by the plaintiff under the patents in suit, with the intention that the purchasers will use them in combination with such razors.

5. Razor frames ordinarily last the owner for years or until lost. Razor blades are rarely usable for more than a week or two without sharpening. Although some economical users sharpen their dull blades, thus extending the lives of the blades for a considerable time, the usual practice of by far the greater number is to throw the blades away when they become dull. This practice is well known to the plaintiff, and its business has been developed largely with reference to it. A purchaser who buys one of the plaintiff's razors may reasonably suppose that the manufacturer intends him to be free to maintain it in use by the purchase and use of blades other than those made by the plaintiff, when the original complement of five, sold with the razor, have become too dull for efficient use; and the plaintiff in selling its razors and blades impliedly consents to such maintenance.

6. The following prior patents disclose structures substantially the same as the blade described in claims 5, 10, 11, and 12 of the Behrman patent; Sharpnack, No. 1,089,726; Sharpnack, No. 1,089,727; Smith, No. 841,729; Brunacci, No. 933,415; Hygonnet, No. 950,820; Shure, No. 1,124,668.

Comment: While not conceding the fact of the above finding, the plaintiff's principal effort to avoid its legal consequence was based upon what it contends is a new and different function of some of the parts. The following points may be noted:

(a) The fact that the Behrman and Dalkowitz patents were evolved as a result of the necessities of the plaintiff's business does not add or detract from the merits of the plaintiff's position. It may be that the plaintiff set about to "invent patents" as the defendant puts it rather than to patent inventions, but even so the question of invention remains and must be determined from what was accomplished and not from the motive which prompted the effort.

(b) The general distinction which the plaintiff attempts to draw between the blades of the prior patents and its blade is that the marginal indentations in the former are designed to prevent rather than permit forward movement of the blade. This contention will not bear analysis. In all the patents, including the plaintiff's, the primary function of these indentations is to receive lugs affixed to the frame (either depending from the cover or standing up from the saddle). Thus, in all cases these indentations are designed to enable the lugs to perform their function, which is to hold the blade firmly in the correct position for use. The only difference is that in most of the prior patents the final result is obtained immediately, while in the plaintiff's it occurs after the lugs have performed a subordinate function in pushing

the blade forward against stops. Even this subordinate function occurs in the first Sharpnack patent, though there it is attained by somewhat different means—a set screw.

(c) It is true that the blades of the two Sharpnack patents have nothing specifically designated as "stop engaging portions," but then the Sharpnack frames have no stops. If the Sharpnack blades were put into the plaintiff's frame and adjusted, the front corners of the blades would be "stop engaging portions" just as genuinely as the corresponding parts of the plaintiff's blades.

(d) Whatever the practice, there is nothing in the claims or specifications of the Behrman patent which excludes a flexible blade; nor is there anything which limits the blades of the Sharpnack, Smith, or Valabregue patents to blades of that type, or which excludes the use in them of thick rigid blades.

### Conclusions of Law.

1. The blade claims (Nos. 5, 10, 11, and 12 of the Behrman patent) are void by reason of anticipation by the blade structures of the Sharpnack, Smith, Brunacci, Hygonnet, Shure, Leahy, and Valabrege patents, and by reason of want of patentable novelty over the prior art.

Comment: This conclusion follows from the sixth finding of fact.

2. The manufacture and furnishing by the defendant of blades to legitimate owners of "Gem Micromatic" razors manufactured and sold by the plaintiff under the patents in suit does not constitute contributory infringement of such patents.

Discussion: The law governing contributory infringement by renewal of parts in a patented machine stated in Wilson v. Simpson, 9 How. 109, 126, 13 L. Ed. 66, has not been departed from or modified in any essential particular. The basis is a rule of public policy (in some decisions called an implied license and in others a presumed intention on the part of the patent owner) which recognizes it as fair and reasonable that, if the patented machine is such that persons who purchase it do so with the reasonable expectation that they are free to renew used parts from time to time from any source they may choose without further consent of the seller, others ought to be free to furnish such parts without incurring the consequences of infringement. "But if another constituent part of the combination is meant to be only temporary in the use of the whole, and to be frequently replaced, because it will not last as long as the other parts of the combination, its inventor cannot complain, if he sells the use of his machine, that the purchaser uses it in the way the inventor meant it to be used, and in the only way in which the machine can be used." Wilson v. Simpson, supra. See, also, Heyer v. Duplicator Mfg. Co., 263 U. S. 100, 44 S. Ct. 31, 68 L. Ed. 189.

In determining whether or not the machine is one which calls for the application of the rule, various matters have been taken into consideration, such as the comparative cost of the part renewed and the balance of the machine, whether or not the part renewed is a perishable article which it is the object of the mechanism to deliver (Morgan Envelope Co. v. Albany Perforated Wrapping Paper Co., 152 U. S. 425, 14 S. Ct. 627, 38 L. Ed. 500) and whether or not the parts wear out and have to be replaced (Heyer v. Duplicator Mfg. Co., supra.)

In the case at bar the machine is not one which delivers a perishable article consumed in the using, nor are the renewed parts destroyed, nor do they actually wear out in the sense that they cannot by repair (sharpening) be restored to an indefinite period of usefulness. The need for new parts arises from the fact that it is much more convenient to buy them than to have the old ones restored or repaired, and the further fact that the small cost of the parts allows most users to consult their convenience in this respect. This is just what the plaintiff expects them to do and in fact much of its profit arises from their so doing.

Discarding for the moment forms of words and what in some cases appear to be arbitrary tests adopted by the courts, and returning to the fundamental principle involved it will readily be seen that here is a piece of mechanism in which both the patentee and the public expect that parts, costing a small fraction of the whole price, will in ordinary practice be thrown away after being used a very few times, and new ones purchased to take their place. That being the usual way in which the article is maintained in use, it follows that, in ordinary justice, one who purchases it has "a right to suppose that he was free to maintain it in use, without the further consent of the seller."

The bill will be dismissed with costs.