## AMERICAN SAFETY RAZOR CORPORATION v. FRINGS BROS. CO.

### No. 4741.

Circuit Court of Appeals, Third Circuit.

Dec. 20, 1932.

Thomas G. Haight, of Jersey City, N. J., and Samuel E. Darby, Jr., and William S. Gluck, both of New York City (Howson & Howson, of New York City, of counsel), for appellant.

George E. Middleton, of New York City (Pennie, Davis, Marvin & Edmonds, of New York City, and Ballard, Spahr, Andrews & Ingersoll, of Philadelphia, Pa., of counsel), for appellee.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

BUFFINGTON, Circuit Judge.

In the court below American Safety Razor Corporation (hereafter called plaintiff), owner of two patents, charged Frings Brothers Company (hereafter called defendant) with infringement thereof. One patent, No. 1,739,280, was granted December 10, 1929, to M. B. Behrman for "Razor and blade therefor"; the other, No. 1,773,614, was granted August 19, 1930, to G. Dalkowitz for a "Safety Razor." On final hearing the court below dismissed the bill, entering a decree that the Behrman patent was void by reason of anticipation and by reason of want of patentable novelty over the prior art and that defendant, in making and furnishing blades to legitimate owners of plaintiff's razors made by plaintiff under said patents, was not contributory infringer. From such decree plaintiff appealed.

We avoid much needless repetition by referring to the illuminating opinion of the trial judge reported at 56 F.(2d) 449, 450. Therefrom it appears plaintiff makes and sells what it calls the "Gem Micromatic" razor, which consists of two distinct, separable, individual parts, namely, A, a frame adapted to hold a removable blade, and, B, a shaving blade adapted for use in such razor frame. With plaintiff's alleged exclusive right to make and sell such frame we are not here concerned, for the defendant does not make or sell such a frame. But it appears that when plaintiff's customer, who bought and paid for the frame, later uses in the frame a blade made by a third party, such owner becomes an infringer and the defendant who furnishes the blade, knowing it is

to be so used, is a contributory infringer. For on analysis it will be seen that in order to convict the defendant of contributory or secondary infringement, we must first be satisfied the user thereof would have been an original or primary infringer. It follows, therefore, that while this case is against the defendant blade maker, the underlying question is the right of the frame buyer from plaintiff to unrestricted blade replacement. Such being the situation, the questions involved are twofold.

First. Is the defendant's replacement blade an infringement of plaintiff's patent, for, if it is, its use in plaintiff's razor frame or in any other type of frame is unlawful. Second. If the defendant's blade is not an infringement, because unpatented, is its use by the owner of plaintiff's patented frame unlawful? To those questions we address ourselves.

Turning then to the question whether the supply blade of defendant infringes plaintiff's patent rights, we note that the safety razor art is a thoroughly occupied field. Originally novel and radical in character and for years the subject of patentable novelty and the source of large profits, the field has been thoroughly developed, and as a result thereof and the employment of skilled engineering in its progress, improvement and development are naturally to be looked for. Moreover, courts in dealing with an art, originally pioneer in origin, must carefully scrutinize the constant efforts of those who have enjoyed a profitable patent monopoly to lengthen such monopoly by patents for noninventive changes. Bearing this in mind, we inquire whether the blade of Behrman was really inventive in character or such an adaption or minor change as would naturally follow in the wake of such a threshed out field as the successful safety razor one had enjoyed. In that respect the record shows that Behrman's razor was never commercially made and therefore it has in no way brought about any advance in the art, and the trial judge found as a fact that: "The following prior patents disclose structures substantially the same as the blade described in claims 5, 10, 11, and 12 of the Behrman patent; Sharpnack, No. 1,089,726; Sharpnack, No. 1,089,727; Smith, No. 841,729; Brunacci, No. 933,415; Hygonnet, No. 950,820; Shure, No. 1,124,668."

We here note that the fact that Sharpnack's blade was used in a different way and with a different motion than Behrman's, in no way detracts from the fact that in his

blade and contour Behrman's shows no inventive difference. Agreeing as we do with the finding of fact of the trial judge, the decree that "the blade claims (Nos. 5, 10, 11, and 12 of the Behrman patent [No. 1,739,-280]) are void by reason of anticipation * * * and by reason of want of patentable novelty over the prior art," is affirmed.

Such being the case, we turn to the second question, namely, does the use of this unpatented supply blade by the owner of razor frame, bought from the plaintiff, make him an infringer and the blade maker who sold it to him for such use a contributory infringer? This depends on whether the principle of Wilson v. Simpson, 9 How. 109, 13 L. Ed. 66, applies to the present case. In that regard the trial judge said: "The law governing contributory infringement by renewal of parts in a patented machine stated in Wilson v. Simpson, 9 How. 109, 126, 13 L. Ed. 66, has not been departed from or modified in any essential particular." That case held: "But if another constituent part of the combination is meant to be only temporary in the use of the whole, and to be frequently replaced, because it will not last as long as the other parts of the combination, its inventor cannot complain, if he sells the use of his machine, that the purchaser uses it in the way the inventor meant it to be used, and in the only way in which the machine can be used."

Applying that principle to the replacement blade of a safety razor, the trial judge further said: "In the case at bar the machine is not one which delivers a perishable article consumed in the using, nor are the renewed parts destroyed, nor do they actually wear out in the sense that they cannot by repair (sharpening) be restored to an indefinite period of usefulness. The need for new parts arises from the fact that it is much more convenient to buy them than to have the old ones restored or repaired, and the further fact that the small cost of the parts allows most users to consult their convenience in this respect. This is just what the plaintiff expects them to do and in fact much of its profit arises from their so doing. Discarding for the moment forms of words and what in some cases appear to be arbitrary tests adopted by the courts, and returning to the fundamental principle involved it will readily be seen that here is a piece of mechanism in which both the patentee and the public expect that parts, costing a small fraction of the whole price, will in ordinary practice be thrown away after being used a very few

times, and new ones purchased to take their place. That being the usual way in which the article is maintained in use, it follows that, in ordinary justice, one who purchases it has 'a right to suppose that he was free to maintain it in use, without the further consent of the seller.'"

Agreeing thereto, the decree below is affirmed.

DAVIS, Circuit Judge, dissents.