## GILLETTE SAFETY RAZOR CO. v. STANDARD SAFETY RAZOR CO.
### No. 339.

Circuit Court of Appeals, Second Circuit.
April 3, 1933.

George E. Middleton, of New York City, for appellant.

George P. Dike, of Boston, Mass., and Charles Neave, of New York City, for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

This suit is for an infringement of the Thompson patent, No. 1,815,745, which was held valid and infringed below as to claims 1, 2, 4, 5, 7, and 8. The patent relates to a safety razor of the Gillette type, in which is used a thin flexible double-edged blade which is clamped and adjustably flexed between a guard plate and a cap. Blades of this type have been in use for more than twenty years. The razor frame and the double-edged blade have had patent protection under patents which have expired.

The patented razor in this suit differs from the well-known Gillette razor in one respect. The corners of the cap are provided with small reinforcing lugs designed to add rigidity and prevent deformation should the user accidentally drop the cap. The patentee says that, if the cap of an old Gillette razor is dropped, the impact of the blow may affect the metal at the corner and form a little burr which, bearing against the blade, may bend the blade when the razor parts are assembled and, in an extreme case, may crack it. These reinforcing corner lugs are said to avoid this danger and to make the razor more rigid and strong. It therefore became necessary in manufacturing blades to fit this Thompson razor to cut notches in the corners of the blade and thereby escape the lugs. The blade otherwise is the old form of Gillette razor blade.

The claims in suit refer to the Gillette type of razor with reinforcing lugs on the corner of its cap and including a blade as one element. There are no claims on the blades per se. The razors are sold by the appellee with a complement of one or more blades having notched corners. Appellee makes no profit on the sale of the razors, but does realize its profit on the sale of the replacement blades. Safety razor blades are short lived, although it is possible to resharpen them, but most of them are discarded for new blades, avoiding stropping and honing. The appellant does not make the safety razors, but does make the blade. It is charged with contributory infringement, not direct infringement, of appellee's patent. Appellant's blades may be used on the Thompson razor.

Aside from the questioned validity of this patent, we think it sufficient to say that the appellant is not chargeable with contributory infringement by manufacturing and selling replacement blades. The appellee has made clear, as the record discloses, that its original idea was to make a razor with blades so cheap that they might be used but once and then thrown away. It says that the user will always have the cutting edge of his razor blade in the same perfect condition as that of a new blade. It claimed to be the first to produce a razor blade which might be thrown away when dull without the loss of economy. Its advertising matter and information to the trade made all this clear. Moreover, instructions on the blade as to its use read at one time, "no honing or stropping; not to be resharpened." The present notched and slotted blades in no way change the cutting edges, and the same policy continued. The more blades the appellee sold, the greater were its profits. To be sure, there is some evidence that some users resharpened their blades and that they lasted for a year or two, but these were exceptional instances.

If the blades were not merely supplied for use in a patented razor holder but were a nonpatented component of a patented combination, the entire device might be regarded as a patent for a combination with component elements of blade, cap, guard, and mechanism for tightening the cap and guard together. The blade is mentioned in the descriptions of the claims of the patent, and, although that is not conclusive, since elements patented are always described in relation to their unpatented materials with which they are used whether they are a part of the patent or not, the razor patent extends to a combination including the blade as one of its components.

The rule has long been recognized that unpatented components of a patented combination which wear out quickly, as compared to the life of the combination as a whole, may be replaced without infringement. Heyer v. Duplicator Mfg. Co., 263 U. S. 100, 44 S. Ct. 31, 68 L. Ed. 189; Wilson v. Simpson, 9 How. (50 U. S.) 109, 126, 13 L. Ed. 66; American Safety Razor Corp. v. Frings Bros. Co., 62 F.(2d) 416 (C. C. A. 3). This rule applies where the component replaced is material dispensed by the patented device

and very quickly exhausted. Morgan Envelope Co. v. Albany Paper Co., 152 U. S. 425, 14 S. Ct. 627, 38 L. Ed. 500. Where the material supplied is not a component of the patented combination, there is no infringement. Motion Picture Patents Co. v. Universal Film Co., 243 U. S. 502, 37 S. Ct. 416, 61 L. Ed. 871, L. R. A. 1917E, 1187, Ann. Cas. 1918A, 959. Where the patentee does not furnish buyers with the whole combination patented but with only one of the unpatented components, it is not contributory infringement for another to supply that same element, even though that element was not material dispensed by the combination or possessed of a useful life much shorter than the other elements of the combination and thus within the rule stated. Carbice Corp. v. Amer. Patents Corp., 283 U. S. 27, 51 S. Ct. 334, 336, 75 L. Ed. 819.

The reconstruction of the patented article which has already received its complete normal and intended use (American Cotton Tie Co. v. Simmons, 106 U. S. 89, 1 S. Ct. 52, 27 L. Ed. 79) or the sale of an unpatented component of a patented combination which is not merely a repair but is a substitute for and an addition to a part supplied by the patentee embodying the most important feature of the invention (Leeds & Catlin Co. v. Victor Talking Machine Co., 213 U. S. 325, 29 S. Ct. 503, 504, 53 L. Ed. 816) constitutes infringement. In the Leeds & Catlin Case, the infringing article was a phonograph record which, like the record supplied by the patentee for the patented combination of phonograph and record, contained the vital feature of the patent; that is, "a lateral undulating groove of even depth, which, when the disc is revolved, compels the reproducing stylus to be vibrated and propelled across its face." The court said: "It will be observed how important the record is to the invention embodied in the claims. It is the undulations in the side walls of the spiral groove which vibrate the stylus back and forth, transmitting the recorded sound waves to the diaphragm, at the same time propelling the stylus as it engages with the record. * * * It is the disc that serves to distinguish the invention,—to mark the advance upon the prior art."

In the Heyer Case, supra, Mr. Justice Holmes distinguished the Leeds Case, supra, from the case where there were renewals of worn-out parts. In the Carbice Case, supra, Mr. Justice Brandeis distinguished the Leeds Case, saying: "The case at bar is wholly unlike Leeds & Catlin v. Victor Talking Machine Co., 213 U. S. 325, 333, 29 S. Ct. 503, 53 L. Ed. 816, on which plaintiffs rely. That was an ordinary case of contributory infringement. The Victor Company sold machines embodying a patent for a combination. Leeds & Catlin were held to be infringers because the intended incorporation in the Victor machines of the article which they sold, did not constitute a repair of the machine and hence was not within the license implied on sale. Heyer v. Duplicator Mfg. Co., 263 U. S. 100, 44 S. Ct. 31, 68 L. Ed. 189. There was no suggestion that the Victor Company, which itself manufactured and sold the patented product, sought 'to derive its profits, not from the invention on which the law gives it a monopoly, but from the unpatented supplies with which it is used.' In the case at bar the plaintiffs neither sell nor license others to sell complete transportation packages. They supply merely one of the several materials entering into the combination; and on that commodity they have not been granted a monopoly."

We have recognized that the Carbice Case does not change the rule of liability for contributory infringement. Bassick Mfg. Co. v. Grease Gun Corp. (C. C. A.) 52 F.(2d) 36. We think it reasonably clear that the case at bar is controlled by the rule of the Heyer v. Duplicator Mfg. Co. and Wilson v. Simpson Cases. It is urged that the blade supplied by the appellant was not to replace a part completely worn out as was the situation in these two cases. But the evidence of long life of a few blades does not establish that the appellant's blades were not in fact supplied to replace blades of the appellee, worn out and discarded as worn out by their owners. Admitting that the original blades supplied by the appellee might last longer if resharpened, the fact is that the great majority of users discard them without resharpening. If some are resharpened by the users, we find nothing in the rule of the case of Wilson v. Simpson to prevent appellant from replacing by others the discarded blades. In the Wilson Case, it was recognized that the knife blades of the plane had to be replaced every 60 or 90 days. Since one buyer may discard his blades after few sharpenings and another may not, we find no intent of the patentee to prevent the buyer from replacing blades, for all practical purposes worn out, merely because they might stand another resharpening. These razor blades are made wafer thin, and, although they will stand some resharpening, many described them as worn out after use without resharpening.

In American Safety Razor Corp. v. Frings Bros. Co., 62 F.(2d) 416 (C. C. A. 3), certiorari denied March 20, 1933, 53 S. Ct. 524, 77 L. Ed. ——, the Third Circuit Court of Appeals had before it the question here presented whether the owner of a patented safety razor might replace his dull blades from time to time without infringement and it was held he could do so without the charge of infringement.

The appellee cannot be permitted to extend its patent and include the blade as an element of a combination claim. If the subordinate integer, the razor frame, is to be used at all, the combination with the blade is the obvious one. Carbice Corp. v. Amer. Patents Corp., 283 U. S. 27, 51 S. Ct. 334, 75 L. Ed. 819. We think that any owner of a razor made under the Thompson patent may, without the danger of infringement, replace dull blades with sharp ones as frequently as is necessary for his own comfort and purposes. This is the way the appellee has instructed the users of its razors to use the patent combination. Its business was fashioned and operated on that basis for thirty years. The appellant could lawfully supply new blades without the charge of contributory infringement.

Decree reversed.