**EVERSHARP, INC., Plaintiff,**

v.

**PHILIP MORRIS, INCORPORATED,**
**Defendant.**

**Civ. A. No. 3777.**

United States District Court
E. D. Virginia,
Richmond Division.

March 1, 1966.

John D. Dewey, Greist, Lockwood, Greenawalt & Dewey, Chicago, Ill., Fielding L. Williams, George R. Hum-

rickhouse, Williams, Mullen & Christian, Richmond, Va., for plaintiff.

Lewis T. Booker, Hunton, Williams, Gay, Powell & Gibson, Richmond, Va., John T. Kelton, Elmer R. Helferich, Watson, Leavenworth, Kelton & Taggart, New York City, for defendant.

## MEMORANDUM OF THE COURT

BUTZNER, District Judge.

In this action the plaintiff, Eversharp, Inc., complains that the defendant, Philip Morris, Incorporated, infringes plaintiff's patent to Preis and Kuhnl 3,071,857 (referred to as the blade patent or '857), which was issued January 8, 1963.

No questions of jurisdiction or venue exist. Ownership of the patent is not disputed.

Philip Morris' defenses are that the claim of the blade patent is invalid and the claim is not infringed. The court concludes that both of these defenses have been established and that judgment should be entered for the defendant.

The court states its findings of fact and conclusions of law as follows:

### FINDINGS OF FACT

1. The plaintiff manufactures and sells razors and razor blades through a subsidiary known as Schick Safety Razor Company.

Both the blade patent, '857, and a razor patent, 2,911,714, are related. They are each based on an application filed by Preis and Kuhnl on April 26, 1954. The Patent Office directed a division pursuant to 35 U.S.C. § 121. The applicants cancelled the claims to the blade in the 1954 application, and while it was still pending, filed a divisional application on November 9, 1959. This ultimately matured as the '857 blade patent.

2. The single claim of the '857 patent, separated in parts to which identifying letters have been added, is:

A   A blade of the single cutting edge type,

B   which blade is specially designed for use only in a safety razor of the type characterized by a cap which is provided on its underside with a centrally located rear stop for gauging abutment with the rear edge of the blade, a guard which in shaving position is normally clamped against the underside of the cap on the interposed blade but is movable downwardly away from the cap into a blade washing position while being permanently coupled with the cap, which guard is provided on its upper side at its ends with front stops for gauging abutment with the front cutting edge of the blade adjacent the ends of the latter, between which rear and front stops the blade is clamped edgewise flatly against the upper surface of the guard in predetermined shaving position relative to the front of the guard when the guard is moved upwardly into clamped engagement with the cap, and two laterally spaced normally retracted locking prongs which are projectable upwardly from the guard through the rear portion of the blade into substantial abutment with the cap when the guard is moved downwardly away from the cap;

C   said blade being characterized by a straight rear edge

D   for gauging abutment midway between its ends with the rear stop on the cap of the razor,

E   a front cutting edge

F   for gauging abutment adjacent its ends with the front laterally spaced stops on the guard of the razor,

G   and two laterally spaced blade-pivoting apertures in the rear portion only of the blade adjacent the ends of the latter,

H   which apertures are of appreciably larger size than the upwardly projectable prongs in the razor in a direction normal to the cutting edge of the blade, whereby to receive and loosely encircle said prongs when the prongs are projected upwardly and the guard is moved downwardly away from the cap to permit the front cut-

ting edge of the blade to swing freely up and down between the cap and the guard of the razor when the guard is moved downwardly away from the cap while maintaining the blade locked against removal from the razor.

3. Figure 4 of the '714 razor patent discloses the razor blade.

This patent contains sixteen claims. Claims 3 and 4 mention the blade:

"3. In a safety razor of the type in which new blades are adapted to be fed to the same from a magazine, a blade cap and a blade seat between which a blade is adapted to be fed from the magazine and clamped in position for shaving, manually operable means for separating the cap and seat to unclamp the blade to permit a limited movement thereof between the cap and seat and for bringing the cap and seat together again to reclamp the blade, and means operated automatically by said manually operable means for loosely engaging the blade to lock the same against removal when the cap and seat are separated and for releasing the blade when the cap and seat are brought together again, said locking means consisting of one or more prongs which, when the cap and seat are separated, project into one or more holes provided for the same in the blade.

"4. In a safety razor of the type in which new blades are adapted to be fed to the same from a magazine, a blade cap and a blade seat between which a blade is adapted to be fed from the magazine and clamped in position for shaving, manually operable means for separating the cap and seat to unclamp the blade to permit a limited movement thereof between the cap and seat and for bringing the cap and seat together again to reclamp the blade, and means operated automatically by said manually operable means for loosely engaging the blade to lock the same against removal when the cap and seat are separated and for releasing the blade when the cap and seat are

brought together again, said locking means consisting of one or more prongs which, when the cap and seat are separated, project upwardly through the seat into one or more holes provided for the same in the blade."

4. The '857 blade is designed for use in a razor similar to that disclosed in razor patent '714, which is sold by the plaintiff under the name Hydro-Magic. This is a rinsable razor. In general appearance, shaving operation, replacement of blades and in the manner of retaining blades in shaving position after injection, the razor described in patent '714 is the same as the well-known Schick injector razor in common use for a great many years. The improvement of the razor patent '714 consists in the addition of a mechanism by which the lower guard supporting the blade pivots outwardly and downwardly carrying the blade with it. Simultaneously, a pair of prongs project up and into a corresponding pair of holes in the blade. In this manner the blade is suspended loosely on the prongs and may be held under the water faucet for cleaning purposes. The prongs hold the blade in such a position that after the razor and the blade have been cleaned, the blade can be repositioned for shaving when the guard is moved upward to clamp the blade against the cap of the razor.

The defendant has never sold a razor having the rinsing features of plaintiff's razor patent, and the charge of infringement is made solely against the defendant's blades.

5. The defendant's blades are made and sold by the American Safety Razor Company under the names Pal and Personna.

The defendant's blades are similar to the blade claimed in the '857 patent in all material respects. Instead of circular holes, the holes in the defendant's blades are oblong, an immaterial distinction as they are positioned to receive the prongs of the Hydro-Magic razor.

6. The basic injector razor patent was issued August 14, 1934 to Rodrigues, 1,969,945, and has expired. Both the

plaintiff, under the name of Schick, and the defendant, under the names of Pal and Personna, manufacture and sell injector razors and blades.

7. Parts A, C and E, together with the functional statements D and F of the claim of the '857 patent, namely:

A "A blade of the single cutting edge type,

C said blade being characterized by a straight rear edge

D for gauging abutment midway between its ends with the rear stop on the cap of the razor,

E a front cutting edge

F for gauging abutment adjacent its ends with the front laterally spaced stops on the guard of the razor,"

describe precisely the Schick commercial blade and its relation to the Schick razor, which were both sold prior to 1940.

The addition of the two holes is the sole difference between the construction of the blade defined in the single claim of blade patent '857 and well-known commercial blades which were sold long prior to the earliest date to which the patent would be entitled.

8. Injector blades without holes fit the Hydro-Magic razor and can be used for shaving. They cannot however, be released onto prongs for rinsing.

9. The plaintiff's '857 blade is not confined to use only in the Hydro-Magic razor. The '857 blade can be used in all of the common type injector razors, including those manufactured by the defendant.

10. The defendant's blade, which is alleged to infringe, is not confined to use solely in the plaintiff's Hydro-Magic razor. This blade can be used in any common type injector razor, including those manufactured by the defendant.

11. The holes in the blades sold by both the plaintiff and defendant are used in the manufacturing process. When the blades are stacked, bayonet prongs can be fitted through the holes. In this way a stack of blades may be suspended in a tray without damage to their edges. The blades are kept in good alignment and are readily accessible for inspection and for movement in production. A bayonet with two prongs is superior to one with only a single prong. The defendant had used a single slot or hole for this purpose before changing to a two slotted blade, and double pronged bayonets. The plaintiff changed from round holes to slots in 1960 to take advantage of sturdier bayonets.

12. The general concept of a rinsable razor is old. For example, Gaisman's patent for a safety razor issued May 11, 1915, No. 1,139,115, states (Column 1, line 13):

"whereby the blade and guard may be moved relatively to each other to separate them for the purpose of cleaning the parts without requiring the blade to be removed from its holder for such purpose."

(Column 2, line 90):

"When the razor is to be cleaned the guard plate is lowered or moved away from plate 2 by rotating nut 8, thereby exposing the edges of the blade, the guard, the plates 1, 2 in position to be readily cleaned, as illustrated in Fig. 3, thereby overcoming the necessity of removing the blade from its holder for cleaning the parts of the razor."

Gaisman showed a blade with two opposed cutting edges, but stated that the blade may have one or more cutting edges as desired and the guard could be correspondingly arranged. This patent was not cited in the file history of blade patent '857.

Chadwick, No. 1,867,905, issued July 19, 1932, describes at Column 1, line 19, a safety razor which

" * * * will hold the blade securely but entirely exposed for rinsing."

Chadwick's blades are pictured with apertures of various configurations, including a blade with single slots, a blade with three holes, and a blade with a single hole and two notches. These apertures are for holding and positioning the blade

in the razor. This patent was not cited in the file history of blade patent '857.

13. The Examiner rejected the blade claim as unpatentable over Behrman, 1,805,509, issued May 19, 1931. The Board of Appeals reversed, stating "Upon analysis of the appealed claim, we find the same to be drawn, not in a razor blade in vacuo, but to a particular razor blade designed for use with and to fit a particular razor as defined in the forepart of said claim * * *." The board placed great emphasis on the limitation of "a straight rear edge" stating:

"We do not find in Behrman, the primary reference, any disclosure or suggestion of a blade so defined. In this respect, the limitation of 'A straight rear edge' must necessarily mean the configuration of such edge in its entirety rather than of merely portions thereof. In Behrman, the rear edge 32 of the blade has a central notch 38 therein and hence does not satisfy the involved requirement of the claim."

The board recognized that two other cited patents disclosed blades having straight rear edges, but the board pointed out that these did not have apertures of the size relation called for in the claim.

The board never discussed the basic injector razor blade used with Rodrigues, 1,969,945, which is identical to the '857 blade with the exception of the two holes.

14. It was conventional in the prior art to provide apertures for seating, retaining or positioning straight edged blades. The following prior art was not cited in the file history of the '857 patent:

(a) Jones 1,081,747, December 16, 1913 describes a blade of a single cutting edge type that has a straight rear edge and a front cutting edge. It has two laterally spaced round holes in the rear portion of the blade which are used to position the blade in the razor on lugs.

(b) LaChance and Browning, 1,361,-266, December 7, 1920, describe a single edge blade with straight rear and front cutting edges with two oblong holes in the rear portion of the blade to receive studs. In use, the blades reciprocate freely endwise on the studs. The holes are slightly larger than the studs.

(c) Janson, 1,848,078, March 1, 1932, describes a single cutting blade with straight front and rear edges. It also has two holes placed near the rear of the blade to locate the blade on the razor. The blade is quite similar in appearance to the blade claimed in the '857 patent.

(d) Muros, 2,132,798, October 11, 1938, shows a blade with a straight rear edge, a front cutting edge and two holes for locating the blade in the razor.

15. The patent application as originally filed contained blade claims 5 and 6, each of which began with a relatively broad clause:

"A safety razor blade designed for use in a razor of the construction specified in Claim 4 * * *"

The applicants filed an amendment adding blade claims 10 and 11, each beginning with the clause:

"A blade of the single edge cutting type, for use in a safety razor of the type * * *" [described in the claim]

The applicant cancelled the above claims and substituted a single claim which was allowed by the Board of Appeals. This claim specifies:

"A blade of the single cutting edge type, which blade is specially designed for use only in a safety razor of the type * * *" [described in the claim as a razor with facilities for rinsing]

Column 1, Line 13 of the application for the '857 patent states:

"This invention has to do with safety razors of the same general type as that disclosed in Rodrigues Patent No. 1,969,945, wherein a new blade is adapted to be inserted in the head of the razor from a magazine by means of a mechanism which pushes in the new blade and at the same time ejects the used blade."

Neither the application nor anything else in the file history revealed to the Patent Office that the blade claimed in '857

patent was designed to have a precise size and shape that would permit its use in all standard injector razors and their magazines on the market.

## CONCLUSIONS OF LAW

### Patentability

1. The presumption of validity of the blade patent '857 is weakened because pertinent facts and prior art were not cited or considered by the Patent Office and were not before the Board of Appeals. B. F. Goodrich Co. v. United States Rubber Co., 244 F.2d 468, 470 (4th Cir. 1957).

2. The court cannot conclude that commercial success of the blade covered by the '857 patent adds strength to its validity. The blade is not limited to use in the plaintiff's rinsable razor. Its commercial success may be due in part to sales for use in ordinary injector razors. On the other hand, its commercial success cannot be measured by sales of the Hydro-Magic razor because ordinary injector razor blades are usable in that razor.

3. Razor blades of similar dimensions are found in the prior art. It has long been common to put holes in razor blades for any number of reasons, including rinsing the blade and razor. The addition of two holes in the rear portion of the blade does not constitute invention. The claim does not disclose a novel blade. The patent is invalid for anticipation. 35 U.S.C. § 102(a) and (b).

4. Razor blades having a straight rear edge, a front cutting edge and a pair of holes in the rear portion were known in the prior art. Injector razors in which the blade is maintained in shaving position by the means mentioned in the claim of the '857 patent were in commercial production.

Holes in blades designed to receive various parts of razors and to permit movement of the blade were described in the prior art.

It was obvious to one of ordinary skill in the art to modify a known injector razor blade by adding holes of a size and location for a particular purpose. It was obvious to design holes to fit the prongs in the plaintiff's '714 patented rinsable razor. For this reason the '857 patent is invalid. 35 U.S.C. § 103; Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966).

Gillette's original concept of a safety razor with a thin flexible replaceable blade and a razor head adapted to hold and support it in curved rigid condition was a patentable invention. The patent claims on the blade per se and on the razor combination were sustained. Clark Blade & Razor Co. v. Gillette Safety Razor Co., 194 F. 421 (3d Cir. 1912). Since then many patents have been granted covering safety razor blades of a special size having holes specially shaped and located to fit a particular razor. Each time these patents have been litigated, the courts have held the blades to be lacking in invention. See: Essex Razor Blade Corp. v. Gillette Safety Razor Co., 299 U.S. 94, 57 S.Ct. 68, 81 L.Ed. 60 (1936); Gillette Safety Razor Co. v. Standard Safety Razor Corp., 74 F.2d 691 (2d Cir. 1935); Gillette Safety Razor Co. v. Standard Safety Razor Co., 64 F.2d 9 (2d Cir. 1933); American Safety Razor Corp. v. Frings Bros. Co., 62 F.2d 416 (3d Cir. 1932).

5. Consideration of the functional characteristics claimed in the '857 blade patent leads to the conclusion that invention, if any, is found in the razor and not in the blade. It is the operation of the razor that releases the blade from the shaving position to a rinsing position. It is the operation of the razor that returns the blade to the shaving position.

The '857 blade patent will not expire for more than three years after the '714 razor patent. The razor cannot be used for rinsing unless it is furnished with blades having holes to accommodate the razor prongs. It does not follow, however, that the defense of double patenting, which is urged by the defendant, is applicable.

The '714 razor patent discloses the blade claimed in the '857 patent. But

the '714 patent does not claim the blade. A device made in accordance with the claims of the '714 razor patent would not infringe the claims of the '857 patent. The governing principle of law is stated in Montgomery Ward & Co. v. Gibbs, 27 F.2d 466, 469 (4th Cir. 1928):

"It is not fatal if the invention of the second patent is disclosed in the earlier patent, provided it is not claimed there, and the applications for the two patents are copending."

The vice of plaintiff's '857 blade patent is not double patenting.

### Infringement

6. Although the plaintiff's case fails for lack of patentability under both 35 U.S.C. § 102(a) and (b) and § 103, the court will consider the issue of infringement.

The size and shape of the defendant's blade differ in no material respect from that claimed in the '857 patent. With the exception of the holes, both blades are based on the blade used with the razor claimed in the expired patent granted Rodrigues, 1,969,945.

The language of the claim which describes the apertures as designed "to receive and loosely encircle said prongs" reads upon the defendant's blades even though the holes used by the defendant are slots and not circles. The distinction is not material. Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950); Oates v. Camp, 83 F.2d 111 (4th Cir. 1936).

The fact that the defendant uses the blade's slots in its manufacturing process does not establish lack of infringement. Undoubtedly two slots are useful during manufacturing, but the slots do not have to be placed in the precise location of the holes in plaintiff's blade.

7. The claim of the '857 patent calls for "a blade of the single cutting edge type, which blade is specially designed for use only in a safety razor of the type" described in detail in the claim. While this language is in the preamble of the claim, it is a limitation on the claim. If the claim is to be given any validity whatsoever, it must be read with the description of the razor. This is the essence of the plaintiff's claim. See Marston v. J. C. Penney Co., 353 F.2d 976, 986 (4th Cir. 1965).

The defendant's blade is not "specially designed for use only in a safety razor of the type" described in the claim. The accused blade can be used in standard injector razors. Its design is not limited only to use in a rinsable safety razor. The defendant's blade does not infringe the claim of the '857 patent.

8. Lack of infringement also can be predicated on the doctrine of file wrapper estoppel. The patentees introduced limitations in the claim by amendment, changing the specification "A safety razor blade designed for use in a razor of the construction specified in Claim 4 * * *" to the claim that the "blade is specially designed for use only in a safety razor * * *," which contains the specifications of a rinsable razor.

The amendment, "specially designed for use only," constitutes a limitation that cannot be disregarded. The plaintiff is estopped from asserting a scope or interpretation of the patent, which does not conform to the limitation. Power Curbers, Inc., v. E. D. Etnyre & Co., 298 F.2d 484, 494 (4th Cir. 1962).

9. Title 35, U.S.C. § 271(c) provides: "Whoever sells a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer."

The corollary of this rule is stated in Gillette Safety Razor Co. v. Standard Safety Razor Co., 64 F.2d 6 (2d Cir. 1933) and American Safety Razor Corp. v. Frings Bros. Co., 56 F.2d 449 (E.D. Pa.1931), aff'd 62 F.2d 416 (3rd Cir. 1932). In the *American Safety Razor*

case, the court considered the Gem Micromatic razor which the court described as consisting of two distinct parts, a frame and a razor blade. The case did not concern the razor frame—it involved only the blade.

The trial court found:

"The blade manufactured by the defendant is in all respects the blade of claims 5, 10, 11 and 12 of the Behrman patent, and, if these claims are valid, infringes them. It is also the blade of the combination of the Behrman and Dalkowitz patents". 56 F.2d at 450.

The court found that the blade claims were anticipated by the prior art. The court went on to hold that the manufacturing and furnishing by the defendant of blades to legitimate owners of the Gem Micromatic razors did not constitute contributory infringement, saying:

"The need for new parts arises from the fact that it is much more convenient to buy them than to have the old ones restored or repaired, and the further fact that the small cost of the parts allows most users to consult their convenience in this respect. This is just what the plaintiff expects them to do and in fact much of its profit arises from their so doing.

"Discarding for the moment forms of words and what in some cases appear to be aribtrary tests adopted by the courts, and returning to the fundamental principle involved it will readily be seen that here is a piece of mechanism in which both the patentee and the public expect that parts, costing a small fraction of the whole price, will in ordinary practice be thrown away after being used a very few times, and new ones purchased to take their place. That being the usual way in which the article is maintained in use, it follows that, in ordinary justice, one who purchases it has 'a right to suppose that he was free to maintain it in use, without the further consent of the seller.'" 56 F.2d at 451.

The plaintiff urges that this doctrine is not applicable because the blade is the subject of a separate patent and that it is not a component of a patented combination. This argument is without merit. The plaintiff is endeavoring to obtain for the purpose of distinction over prior art the benefit of a combination of the razor and the blade. In alleging infringement it cannot avoid the consequences of such construction by asserting that the claim covers the blade alone.

Claims to the blade were included in the original application for the razor and the blade. It was the Patent Office which directed a division, which matured as the '857 blade patent. The Patent Office's ruling, however, is not conclusive. No case precisely on point has been cited, but in this Circuit the controlling principles have been stated in another context. In considering the requirement of a division with regard to double patenting, Judge Soper said, in Remington Rand Business Service, Inc. v. Acme Card System Co., 71 F.2d 628, 633 (4th Cir. 1934):

"This situation was recognized by the District Court, but the patent was sustained because it was issued upon an application filed as a division of the application upon which the first patent was issued, and this was done at the suggestion or requirement of the Patent Office. It was thought that it would be inequitable to reject the patent, since the plaintiff was led to adopt this course by the Patent Office itself. The effect of such a holding, however, would be to extend the patent for an additional period, since the issuing date of the first patent was July 27, 1926, while the second runs from September 4, 1928. The patentee was not obliged to accept the ruling of the Patent Office, and may not lengthen the term of his monopoly by the improper division of the patent which has resulted."

The same principles may be found in Torok v. Watson, 122 F.Supp. 788, 794 (D.D.C.1954). The court said:

"The remaining claims 25–28 are not before the Court on their merits, but

were rejected by the Patent Office on the ground of misjoinder, in view of a requirement for division and election. The pertinent statute, 35 U.S.C. § 121 (1952 ed.), which enacts as law the existing practice as to division with some changes, provides: 'If two or more independent and distinct inventions are claimed in one application, the Commissioner may require the application to be restricted to one of the inventions.' Although, as indicated in the Reviser's note, division is made discretionary with the Commissioner, the Court interprets the section as permitting judicial review to determine whether the inventions claimed are independent and distinct."

The accused blade is a component of the plaintiff's patented rinsable razor. It is a staple article or commodity of commerce suitable for substantial non-infringing use. For these reasons, the defendant is not liable as a contributory infringer.

10. This is not an exceptional case within the meaning of 35 U.S.C. § 285 and counsel fees are not allowed to the defendant.