## HAUGHEY v. LEE.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE EASTERN DISTRICT OF PENNSYLVANIA.

No. 189.  Argued January 3, 1894. — Decided January 15, 1894.

Letters patent No. 379,644, granted March 20, 1888, to Michael Haughey for
an improvement in interfering devices for horses, in view of the state
of the art at that time as shown by the evidence, are void for want of
patentable novelty in the invention covered by them.

On October 24, 1889, Michael Haughey filed a bill of com-
plaint against Jesse Lee, Lewis S. Lee, and Walter Lee, as
partners, under the style of Jesse Lee & Sons, alleging that
the United States had, on March 20, 1888, granted him letters
patent (No. 379,644) for an improvement in interfering de-
vices for horses; that the defendants were infringing com-
plainant's rights as such patentee; and praying for an
injunction and account.  On January 21, 1890, the defendants
filed an answer, denying infringement, and alleging the in-
validity of complainant's patent, because of certain specified
anticipations and because, under the condition of the art, of
want of invention.  Replication was duly filed, evidence was
taken, and, on May 13, 1890, after argument, the court below
decreed the dismissal of the bill.  From this decree an appeal
was duly taken and allowed to this court.

*Mr. E. J. O'Brien* for appellant.

*Mr. Ernest Howard Hunter* for appellee.

MR. JUSTICE SHIRAS delivered the opinion of the court.

The bill of complaint alleged infringement of the complain-
ant's rights as grantee of letters patent, and the court below,
upon issue joined and evidence taken, dismissed the bill for
want of patentable novelty in the complainant's invention.

The question thus presented for our consideration is the frequent and troublesome one, whether a given patented device evinces novelty or invention, within the meaning of the law of patents, or is merely an improvement, useful perhaps, but so obviously a mere conclusion from what has gone before as not to be entitled to protection as an invention.

In the history of most of the arts, the first invention is of a striking and undeniable character; and the earlier improvements likewise usually display an unmistakable power of invention. But, after the field of invention has been mainly occupied, it becomes difficult to distinguish between improvements that involve patentable invention and those that are the result of the exercise of ordinary mechanical knowledge and skill.

The object of the invention in the present case is to provide a remedy for preventing or curing the habit of interfering in horses. This habit of interfering is the striking of one leg by the other during motion, causing injury of the part struck, and impeding the movement. Many trotting horses carry their feet closely together, and during rapid motion are liable to strike one leg with the hoof of the other, often causing a serious injury. The complainant's design is to fasten a strap on one of the legs of the horse, to which strap shall be attached a pendant that will move or swing freely between the legs, and strike the leg opposite to the one provided with the strap. The effect upon the horse is to lead him to strive to avoid the touch of the swinging pendulum. This he can only do by moving with his legs sufficiently apart to avoid it, and in this way, it is claimed, he soon loses the habit of striking.

Assuming that the complainant's device really operates so as to educate the horse to correct a habit of striking, it would certainly be a useful invention, and, if novel, would be entitled to the protection of letters patent.

It, however, appears from the evidence that interfering devices are old and of various forms, all having the same object—protection of the leg and spreading or widening the

stride. The earlier devices were chiefly to protect the leg, and were in the nature of boots or bandages. However, it was soon perceived that, owing to the docile character of the horse, the interfering apparatus might be made to operate not merely as a protection to the legs when they came in contact, but to train the horse to widen his stride, so as to prevent such contact. Thus we find it stated in letters patent to John J. Davy, granted January 29, 1867, that the patentee sought to cure horses of the vice of intervention by interposing a strap upon one of the legs to which was attached a boot with radiating bristles. The pricking of the bristles led the horse to widen his stride, and thus to effect a cure.

Charles B. Dickinson, in letters patent granted to him on October 14, 1879, claims that by the use of interfering straps to which soft and yielding loops are attached, which strike the horse's leg, he is taught to spread his gait. In the patent granted to Jefferson Young, Jr., on December 13, 1881, it is proposed to cure the habit of interference by a leather boot, which, being attached to one foot, shall lightly touch the other when the two are brought too near each other.

The complainant points to the fact that the pendant swings or moves freely from a loose joint as a feature distinguishing his invention from the preceding ones. As a matter of fact, there is evidence in the record tending to show that just such a pendant, loosely hung, was in use in Norristown, Pennsylvania, and in Philadelphia years before the date of the patent in suit. There is likewise evidence that in all the prior devices the stiff projecting striker would, in time, sag or hang down more or less, thus practically exemplifying the same method of operation as that of the complainant. It likewise appears that the idea of employing a dependent striker, loosely jointed to a leg strap, was not original with the patentee. Such a pendant was used in devices to prevent kicking, and no invention would seem to be exercised in adapting the device to the new purpose of curing interference.

The further contention, that the plaintiff's striker taps the leg to which it is attached as well as the opposite leg, presents no substantial difference. As observed by the court below,

every such device used strikes and rubs the leg to which it is attached, as whenever the projecting striker is hit by the opposing leg the blow is communicated to the other. Nor is such supposed function described or referred to in the specification or claim of the plaintiff's patent.

In view, then, of the state of the art, as shown to exist by the defendants' evidence, the court below was right in finding that the complainant's device exhibits no patentable novelty.

There is no merit in the proposition made in the second assignment of error, that defendants are estopped from asserting that there is no patentable novelty in plaintiff's invention, by their conduct in seeking to procure, through one of their employés, a patent for substantially the same invention. Whether or not there is any inconsistency in trying, at one time, to get a patent for a supposed invention, and in afterwards alleging, as against a rival successful in obtaining a patent, that there is no novelty in the invention, it certainly cannot be said to constitute an estoppel. Besides, the defence of want of patentable invention in a patent operates not merely to exonerate the defendant, but to relieve the public from an asserted monopoly, and the court cannot be prevented from so declaring by the fact that the defendant had ineffectually sought to secure the monopoly for himself.

The decree of the court below is accordingly

*Affirmed.*