## McCLOSKEY v. TOLEDO PRESSED STEEL CO.

Circuit Court of Appeals, Sixth Circuit.
January 18, 1929.

No. 5038.

George E. Kirk, of Toledo, Ohio, for appellant.

Charles W. Owen, of Toledo, Ohio (Owen & Owen, of Toledo, Ohio, on the brief), for appellee.

Before DENISON, MACK, and MOORMAN, Circuit Judges.

MOORMAN, Circuit Judge. This is a suit for infringement of the McCloskey patent, 1,610,301. The bill asked for an injunction and an accounting. By amendment unfair trade competition was alleged. The patent is for a torch intended to be used as a traffic guard against excavations or defects in streets. The torch consists of two substantially semispherical sheet metal members united by a weld or joint in the region of the maximum diameter to form an oil reservoir. The base member is flattened at the bottom to form a seat, and is provided with a rigid load or weight to render the torch self-righting. The upper member has a central, inwardly threaded throat with a wick receiving bushing therein. There are three claims in the patent. From the standpoint of invention they are alike. The only difference between claims 1 and 2 is that the latter calls for an endless bead as a specific means for anchoring the rigid load element. In this respect it also differs from claim 3, which further differs from the others in calling for a wick receiving bushing in an opening in the dome-shaped upper section. There is nothing, however, in either the endless bead or the wick receiving bushing that distinguishes one claim in merit from the others. The former is a common mechanical expedient, and the latter or its equivalent must be inferentially included in claims 1 and 2 to make them operable. The court below held all the claims invalid.

█ In the course of the trial in the court below counsel for appellant stated to the court that only claim 3 was involved in the suit. It is now claimed that the effect of that statement was to limit the hearing to that claim. It did not, of course, have that effect, if the other claims were put in issue by the answer. They were. The bill charged a general infringement, and the answer did not deny that appellee was making a similar torch, but alleged invalidity, and asked that all the claims be held void and of no effect. There were, as we have said, no inventively distinctive features in any of the claims. If one was valid, it would be difficult to see why the others were not, too. In that situation the court was clearly right, we think, in treating all of them as in issue.

█ Appellant's claim of invention, as we understand it, rests primarily, if not wholly, upon the zone-shaped upper member of his oil reservoir. Because of its shape this upper member is said to possess extraordinary utility when made of sheet metal and joined with a similarly shaped sheet metal base. It is said to give the device the appearance of a bomb, and therefore to attract instant recognition as a danger signal, and it is also said to offer greater resistance to the blows from vehicles and horses that such a device necessarily receives while performing its functions in the street than it would if otherwise shaped. Aside from these functional qualities which appellant insists are important, there is, as he claims, an important manufacturing advantage in the fact that the upper and lower members, being alike, can be made from the same die at a great saving of expense. These new results, as claimed by appellant, are achieved, as he insists, because, and only because, the upper member of his reservoir is zone-shaped. This limitation which he imposes upon his device for functional purposes he also seeks to impose upon the claims of his patent. The latter seems necessary in order to avoid a considerable body of prior art that is cited. We doubt that the claims can be so limited, but, if they could, they as well as appellant's device would be completely anticipated in this feature by the British patent, 997, issued to Monck in 1880.

█ The Monck patent was for a lamp, having a spherical reservoir, a wick-receiving opening in its top, a flattened bottom, and a weight in the bottom portion to right the lamp when it was disturbed or knocked over. The patent drawing shows the upper half of the reservoir semispherical in form. The only difference between it and appellant's reservoir is that the latter is constructed of two sheet metal parts secured together by seam-

ing or welding, whereas the former consisted of a single spherical body of cast metal. The joining together of two sheet metal parts to form an oil reservoir was not new in the art. See British patent to Jacob, No. 9170, issued in 1893. Certainly it is not invention to substitute sheet metal for cast metal. Drake Castle Pressed Steel Lug Co. v. Brownell & Co., 123 F. (6 C. C. A.) 86. Monck, as we have stated, had a wick-receiving opening in the top, a flattened bottom, and a weight in the bottom to render the lamp self-righting. He did not specify means for retaining the weight in position, but many were open to him, among them the endless bead called for in claim 2 of McCloskey.

█ What evidence there is of commercial success is too meager to lend support to the claim of invention, even if the question were closer than we find it to be. The claim of unfair trade competition seems to have been made more in aggravation of damages for patent infringement than otherwise. From any point of view it must be denied. Except as supplied by an assumption of the existence of patent rights, there was no substantial evidence of such competition. This is true, even if we consider the Worthley letter which appellant asks us to consider. The filing of an application by appellee in the name of Close for a patent embracing claims which were placed in interference with the patent in suit does not raise estoppel. Haughey v. Lee, 151 U. S. 282, 14 S. Ct. 331, 38 L. Ed. 162. Nor do the other circumstances cited, viz. That Close and Feemster, who owned the appellee company, collaborated with McCloskey in making the application in McCloskey's name, and that it was assigned to Jennison and later reassigned to McCloskey. Neither Close nor Feemster had anything to do with the assignment to Jennison. McCloskey alone made it, and he took the reassignment with full knowledge of all the facts which he now relies upon.

Affirmed.