## LIPPER MFG. CO., Inc., v. AMERICAN BRAND TRIMMING, Inc.

District Court, S. D. New York.
June 2, 1930.

Munn, Anderson & Munn, of New York City (Leonard L. Kalish, of Philadelphia, Pa., of counsel), for plaintiff.

Charles S. Jones, of Washington, D. C., for defendant.

KNOX, District Judge.

If the law, as it has been declared, permitted, I should be disposed to hold that defendant's ownership and exploitation of Steinberg's patent, No. 1,664,271, of March 27, 1928, had worked an estoppel of the defense of noninvention here interposed to the alleged infringement of Lipper patent, No. 1,661,141, of February 28, 1928, for a bandeau. While the record is open to a fairly strong inference that Steinberg's idea for his net was not original, but was brought to him by the sales manager of defendant, who had probably seen the Lipper net, the facts before the court are not sufficient to bar defendant from claiming that plaintiff's patented net does not disclose invention. See Steel Protected Concrete Co. v. Central Improvement & Contracting Co. (C. C.) 155 F. 279, 285, and Haughey v. Lee, 151 U. S. 282, 285, 14 S. Ct. 331, 38 L. Ed. 162. The question of patentability by Lipper must, therefore, be considered upon its merits.

Lipper's hair net or bandeau comprises a head gear of open, loosely knitted mesh of considerable elasticity, which is first produced in flat condition. At the front peripheral portion is attached a pre-formed and nonelastic head band (a piece of ribbon). It is secured by the stitches of the mesh with the result that a union, practically integral, is obtained between two separately formed pieces of material of differing structural characteristics and qualities. Into the rear peripheral edge of the mesh, an elastic rubber band is knitted, and in such manner that the rear edge of the bandeau does not slide back and forth on the rubber band. The ends of the ribbon head band portion are then attached to those of a rubber band, thus forming a continuous periphery that will circumferentially encircle, while the mesh will inclose, the head of the wearer of the bandeau. In some instances, the ribbon head band is extended beyond the peripheral portion of the head part of the bandeau so as to form opposed streamers which may be tied about the head.

These nets or bandeaus are largely used by women engaged in playing tennis, and other outdoor sports, and they are also worn at night for the purpose of preserving waves or curls of feminine hair. They have been widely distributed through the medium of chain stores, such as Kresge, J. G. McCrorey, etc., at from 10 to 25 cents. When defendant entered the field, it practically copied the Lipper article, and sold its product at a cheaper price, also distributing the same through chain stores.

The first two claims of the patent are these:

"1. A bandeau of the character stated, comprising an elastic knitted netting having a relatively non-elastic preformed textile head-band knitted to the front edge thereof; said head-band having opposed free ends for securing the same about the head and an elastic band along the rear edge of said netting.

"2. A bandeau of the character stated, comprising an open mesh elastic knitted netting, formed of parallel chains of interlocking stitches connected by spaced transversely extending threads, having a preformed woven textile head-band knitted to the front edge thereof, said head band having opposed free ends whereby the same may be tied about the head, and an elastic band laced through the rear edge of said netting, and terminating at the preformed head-band and shaping the netting to fit the head."

Claim 3 is the same as claim 1, except that it fails to specify the streamers or free ends of the woven head band.

Lipper, on September 15, 1925, received a patent, No. 1,554,163, on an earlier type of hair net or bandeaux. In it, the structure is formed in flat condition, and is provided with a closely knitted head band portion formed integrally with the body portion. The rear peripheral portion has an elastic band drawn through the edge of the loosely knitted mesh body portion. The ends of the front head band and the ends of the elastic are then joined to make a head-shaped net.

Plaintiff argues that the first Lipper patent is not to be considered as art ahead of the patent in suit, due to the fact that it was not issued, nor were articles made according to its teachings in public use for more than two years prior to the application for patent No. 1,661,141. It is also said that a charge of double patenting cannot be upheld for the reason that the second patent does not cover the construction claimed in the first. By reason of the presence of the Halo hair net in the case, these considerations need not receive much attention. The Halo net is imported from abroad and had been on the market in this country for more than two years prior to the application of either of the Lipper patents. This net is made on a lace machine. It, too, has an elastic mesh head piece. Attached to the front peripheral portion is a knitted relatively inelastic head band, which at both ends is attached to a rubber band which is threaded through the rear peripheral edge of the mesh comprising the head portion of the structure. The Halo net can be made as a unitary article on a Tixch lace machine. The article retails from 50 to 75 cents, and apparently has met with some commercial success, notwithstanding its relatively high price.

The art of hair nets is very old. Raphael shows one in his portrait of Giuliano De Medici. Types of hair net mesh engaged the attention of the Supreme Court in Dalton v. Jennings, 93 U. S. 271, 23 L. Ed. 925, where a patented netting composed of a main set of meshes fabricated of coarse thread, combined with an auxiliary set or sets of meshes of fine thread, was held not to constitute invention. From what the court said, it is clear that the character of plaintiff's head mesh is not patentable over the mesh of the Halo net. The prior art is also filled with nets showing head bands at the front and the insertion of elastic bands at the rear. See Godey's Lady Books. So far as can be seen, the field contains but little that can be the subject of a patent. An example of how closely the later art approximates the earlier may be seen by a comparison of the first Lipper patented structure with the Halo net. Indeed, if that patent were here in suit, it is not improbable

that the Halo net might impair, if it did not destroy, its novelty. From my examination of the art, the only possible patentable novelty in the patent in suit is the woven head band. But that the substitution of a piece of ordinary pre-formed ribbon for the relatively inelastic front head band of the Halo net, which can be knitted integrally with its mesh, just as the pre-formed ribbon can be attached to the mesh of Lipper patent in the process of knitting the latter can amount to invention, is more than I can see. Furthermore, when Lipper took out his prior patent, he described the use of a woven head band, but did not claim it as unique, and I shall not find that its use in the later patent exhibits inventive thought. What Lipper did was nothing more than to display some evidence of mechanical skill in his art. See Dalby v. Lynes (C. C.) 64 F. 376.

The bill is dismissed for lack of invention shown by the patent in suit.