## ALLBRIGHT–NELL CO. v. AUTOSTEAM PROCESS CO.

### No. 5000.

Circuit Court of Appeals, Seventh Circuit.

May 3, 1934.

Rehearing Denied June 21, 1934.

Fred Gerlach and George I. Haight, both of Chicago, Ill., for appellant.

A. Arnold Brand and George W. Hansen, both of Chicago, Ill., for appellee.

Before EVANS, SPARKS, and FITZ HENRY, Circuit Judges.

SPARKS, Circuit Judge.

On August 29, 1921, William Laabs filed his application for United States Letters Patent, Serial No. 496,276. It is still pending and has been assigned to appellant. On October 30, 1922, after appellant had become the owner of Laabs' application, one Schmelzer filed his application for letters patent, and on November 17, 1925, patent No. 1,561,667 was issued to him on that application, and it was subsequently assigned to appellee. Appellant's application and appellee's patent both involve the process of digesting materials for making fertilizers and stock foods. On May 12, 1926, an inter-

ference was declared by the Commissioner between the patent and appellant's application. For the purpose of bringing about that interference, appellant in its application copied claims 1, 2, and 4[1] from the Schmelzer patent.

After a spirited contest with respect to the priority of these claims, the Examiner of Interferences awarded priority to Laabs, but on appeal, the Board of Appeals awarded priority of claims 1 and 2 to Schmelzer, and the Examiner's award as to claim 4 was sustained. Claims 1 and 2 having thus been denied to Laabs, the Commissioner refused to grant a patent to him, and thereupon appellant, as the assignee of Laabs, filed its bill in equity in the District Court, under section 4915 of the Revised Statutes (35 USCA § 63), for an order directing the Commissioner to issue to appellant as assignee of Laabs a patent containing the two claims which had been awarded to Schmelzer. Appellant alleged under oath of its president that Laabs' application claimed the same invention as that set forth in Schmelzer's claims 1, 2, and 4, of which Laabs was the original, first, and sole inventor, that the claims were not anticipated by any prior patent, and that appellant had made and sold a large number of equipments for practicing the process according to that invention, and that the question presented was that of priority of the invention between Laabs and Schmelzer. Appellee answered and among other things admitted specifically that the invention involved in its claims 1 and 2 was the same as that claimed in the Laabs application, which had been assigned to appellant; that said claims were not anticipated by any prior patent; and that appellant had sold its apparatus with directions that it could be so used as to practice the process of Schmelzer's claims 1 and 2.

Appellee included with its answer a counter-claim which charged appellant with infringement of the Schmelzer claims 1 and 2.

The issues were closed by appellant's reply which did not assert any prior art. Almost two years thereafter appellant asked leave to dismiss its bill of complaint and to amend its answer to the counter-claim. The amendment which asserted prior art was permitted, and the motion to dismiss the bill was continued until final hearing. At that hearing and before evidence was given, appellant renewed its motion to dismiss the bill, stating that it did not ask that the order of dismissal be entered until the counter-claim was disposed of, but that it abandoned its right to offer evidence in support of the bill and elected to stand upon its amended answer to the counter-claim. Accordingly no evidence was offered in support of the bill, and the trial proceeded on the issues raised by the counter-claim and appellant's amended answer. The court entered a decree on the counter-claim in favor of appellee, and dismissed appellant's bill for want of equity. Appellant made no objection, and saved no exception to the court's ruling in dismissing the bill, and it has assigned no error in that respect.

From the record it must be conceded that, as between the parties to this action, priority of the claims in suit is conclusively established in appellee. The errors assigned and presented, therefore, arise out of the issues tendered by the counter-claim and appellant's answer thereto, and are based on the court's ruling that claims 1 and 2 of the Schmelzer patent are valid and infringed.

Appellant's contention is met by appellee's suggestion that validity and infringement are both conclusively established by appellant's verified admissions in the original bill, under the ruling of this court in Uihlein v. General Electric Company, 47 F.(2d) 997, 1005. That case involved a contest between inventors as to which was the first discoverer of certain improvements in electrical furnaces. Each party had applied for a patent and their applications were co-pending, and an interference was declared. That issue was

---

[1] "1. The process of preparing materials containing nitrogen compounds or proteins, for fertilizer or stock food purposes, consisting in digesting the material in a closed steam tight container subjected to heat, in steam derived substantially entirely from moisture contained in said material.

"2. The process of preparing materials containing nitrogen compounds or proteins, for fertilizer or stock food purposes, consisting in digesting the materials in a closed steam tight container subjected to heat, in moist steam derived substantially entirely from the moisture contained in said materials.

"4. The process of preparing materials containing nitrogen compounds or proteins, for fertilizer or stock food purposes, consisting in digesting the materials in a closed steam tight container subjected to heat, in moist steam derived substantially entirely from the moisture contained in said materials, releasing the steam after digestion is completed, reducing the pressure of steam in the container below that of the atmosphere to cause the removal of a further amount of moisture from the materials treated."

submitted to the Commissioner of Patents who denied the application of G and B, joint inventors, and awarded priority to C, to whom the patent was issued. Thereupon a suit was instituted in the District Court under section 4915 to secure the issuance of letters patent to G and B upon their application which had been denied by the Commissioner. The appellant, Uihlein, contested the suit and by counter-claim sought to sustain the C patent and obtain a decree for an injunction and an accounting due to infringements of it. The District Court entered a decree for the General Electric Company directing the Commissioner to issue a patent to that company on the application of G and B, and dismissing Uihlein's counter-claim. Upon appeal to this court it was held that C first discovered the new combination for which he obtained the patent, and that he did not abandon his discovery before the patent was issued to him, hence he was entitled to priority. The original opinion reversed the decree and remanded the cause with directions to proceed in accordance with the opinion. In appellants' petition for a rehearing they sought a modification of that part of the opinion which directed a further hearing in the District Court. With respect to that question this court said:

"We are asked by appellants not to remand the cause to the District Court for a trial of the issues presented by the counter-claim (validity and infringement of the Callaghan patent) because appellees have, by their pleadings, barred themselves from raising the issue of validity, and, by their admissions, removed all controversy as to their infringement of the patent. We agree with appellants' counsel on both points.

"Appellees, who have brought this suit to secure to themselves the legal monopoly, which the grant of a patent conveys, and to prevent appellants from enjoying the Callaghan patent, which covered the same product or combination, cannot in this same suit, now that they have lost their suit to obtain the patent, challenge the validity of the patent. * * *

"Likewise on the issue of infringement, there is no controversy in fact.

"It would, therefore, be contrary to our practice (citing cases) to remand a cause to the District Court for trial of issues over which there is no dispute or concerning which the losing party is estopped to further contest. * * * *"

In the trial of that case there was no suggestion of prior art, and no one claimed that it would or could be shown if a further

hearing were permitted. The record disclosed no intimation of invalidity, and patentability was not only conceded by the parties, but it was not doubted by the court. It was in effect conceded by the parties that there had been infringement by appellees in case the court should award priority to appellants. It was under those circumstances that this court said that the cause would not be remanded for the purpose of re-submitting those questions to the court because appellees had estopped themselves by their admissions from denying validity and infringement. Had it been clear to the court at that time that there was a lack of patentable subject matter, it would have been warranted in dismissing both the bill and the counter-claim of its own motion, even though both parties had admitted validity and had presented only the question of priority. Patentability may not be established upon the mere agreement of parties, for it must be based upon invention, and that requirement cannot be overlooked by either the trial or the appellate court. Hill v. Wooster, 132 U. S. 693, 10 S. Ct. 228, 33 L. Ed. 502; Palmer Pneumatic Tire Company v. Lozier (C. C. A.) 90 F. 732.

In the instant case appellant, more than five months prior to the trial, had moved the court to dismiss its bill of complaint, thereby electing to confirm the award by the Board of Patent Appeals of priority to appellee. At the same time, by permission of the court, appellant amended its reply to the counter-claim by incorporating therein citations of prior art which it alleged was anticipatory of Schmelzer's patent. To the court's ruling in permitting this amendment appellee saved no exception. At the trial when appellant renewed its motion to dismiss its bill and announced the abandonment of its right to introduce evidence in support of it, the court withheld its ruling on the motion, and evidence was heard on the issues raised by the counter-claim and the amended reply. This evidence included not only appellant's admissions with respect to validity and infringement, but also the alleged prior art. Appellee made timely objections to the admission in evidence of the prior art and saved exceptions to the court's adverse ruling thereon. The court held claims 1 and 2 of Schmelzer's patent valid and infringed, and it is quite obvious that the ruling was based on appellant's admissions, as the prior state of the art was not mentioned in the findings of fact nor in the conclusions of law. Of course if the trial court at the time of entering the decree had been convinced that there was a lack of patentable subject matter, as was the case

in Hill v. Wooster, supra; or that in view of the prior state of the art appearing from the record there was no novelty, as in the case of Leslie v. Tracy (C. C.) 100 F. 475, it would have been the duty of the court to so state, and to dismiss the counter-claim, regardless of the admissions of the parties. When the court held that claims 1 and 2 were valid and infringed by reason of appellant's admissions, it must also have held that the claims were not anticipated by the disclosed prior art, because it was the duty of the trial court to determine that question regardless of the admissions. That duty was owing to the public (Haughey v. Lee, 151 U. S. 282, 14 S. Ct. 331, 38 L. Ed. 162), and it could not be overlooked (Hill v. Wooster, supra; Leslie v. Tracy, supra).

In Jones v. Morehead, 68 U. S. (1 Wall.) 155, 158, 17 L. Ed. 662, the bill was for infringement, the answer admitted it, and the trial proceeded on that issue. The court said:

" * * * Upon this issue considerable testimony was taken, when the defendants becoming satisfied that they were not the legal owners of the patent, asked leave to amend their answer by *denying that they had ever made locks of the kind described in it;* and by asserting that the patent was invalid for want of novelty. The Circuit Court permitted them to assert the invalidity of the patent as wanting novelty, but *refused to allow them to deny that they had manufactured the locks* described in it. The admission that they *had* manufactured them stood, therefore, on the record as it came up to this court."

In refusing to permit a denial of infringement, the Supreme Court said:

" * * * When they (defendants) afterwards asked leave of the court to retract that admission and deny the infringement, the court refused such permission. This request was made after the issue was made up, after much testimony had been taken, and its object was to deny a fact previously admitted under oath. It was a matter in the discretion of the Circuit Court, and we are not disposed to review its action on that subject here, under these circumstances, if indeed it can be done under any."

█ In that case it will be noted that the question of validity was permitted to be raised for the first time during the trial and after considerable testimony had been taken, and it is consonant with the pronouncements of the

Supreme Court to which we have referred. It is also to be noted that the defendants in that case were not permitted to retract their admissions of infringement, and that the Supreme Court held that the ruling was not a violation of the court's discretion. We likewise hold in the instant case that appellant's admissions must conclusively bind it as an infringer, in case the claims are valid, for with respect to that matter the public has no interest.

█ This ruling, however, does not dispose of the case, for by the appeal the determination of validity in view of the prior art becomes our duty. A study of the claims and objects of the prior art patents leaves no doubt in our minds that they fully and completely anticipate claims 1 and 2 of Schmelzer.

The cooking, digesting or rendering of animal and vegetable matter containing proteins or nitrogen compounds for fertilizers and stock foods was not novel in Schmelzer's patent. See United States patents to Stein, Nos. 124,983, 125,111, and 125,853; Edson and Silliman, No. 803,050; Metzger, No. 1,091,524; Faust, No. 1,254,317; and British patents, Haddan, No. 19,728, and Powling, No. 8,397. It was likewise old in the art to digest, cook or render animal or vegetable matter in a closed steam tight container in steam derived from moisture contained in the material, as shown in the United States patents, Gray, No. 46,103; Stein, supra; Edson and Silliman, supra; Metzger, supra; Faust, supra; and British patents, Lake, No. 1,957 and 2,547; Haddan, supra; and Powling, supra. It is true that Lake states that water may be added, but he also says that usually there is no water put in the digester save what is contained in the matter to be digested or rendered. It cannot well be doubted that each prior patent cited, would, if later, infringe the very broad claims in suit. Hence, being earlier, they must be held to anticipate. Appellee has not seen fit to suggest to us wherein lies the novelty of the claims in suit over the cited art, and we are unable to detect it. It relies entirely on appellant's admissions as determinative of that fact in its favor, but we are convinced that its contention must fail under the ruling of Hill v. Wooster, supra.

The judgment of the District Court is reversed and the cause is remanded with instructions to dismiss the counter-claim for lack of equity.