See, also, 99 F.2d 207.

Floyd Williams, of Cincinnati, Ohio, and Curtis B. Camp, of Chicago, Ill. (Curtis B. Camp, of Chicago, Ill., and John Weld Peck and John Colville Taylor, both of Cincinnati, Ohio, on the brief), for appellant.

Merrell E. Clark, of New York City (Merrell E. Clark, William R. Ballard, and M. R. McKenney, all of New York City, and Frost & Jacobs, of Cincinnati, Ohio, on the brief), for appellees.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

SIMONS, Circuit Judge.

In the present infringement suit involving patent to Currier, No. 1,438,170, granted December 12, 1922, upon an application filed September 19, 1914, for a "Tel-

KELLOGG SWITCHBOARD & SUPPLY CO. v. MICHIGAN BELL TELEPHONE CO. et al.

No. 7467.

Circuit Court of Appeals, Sixth Circuit.

Oct. 10, 1938.

ephone System with Flickering Recall," the District Court, while intimating that if the claims in suit were valid they would have to be so narrowly construed as to avoid the infringement charged, based its decree of dismissal solely on their invalidity because of anticipation by a prior patent to Smythe, No. 758,116. The decree is challenged by the plaintiff below.

In a non-dial central office telephone system, recall mechanism is the means by which a subscriber attracts the attention of the operator at the central office before his line has been cleared upon the switchboard. Subscribers' telephone lines all terminate in small holes called "jacks" upon the vertical part of the switchboard at the central office. Each jack is marked by a "line lamp," which lighted by the raising of a calling subscriber's receiver, notifies the operator of the call. To answer it the operator inserts in the subscriber's jack an end or plug of one of the fifteen or more flexible cord circuits with which she is provided. The opposite end or plug is for making connection with the called line. Associated with these cord or link circuits are two supervisory lamps. One of these represents the operator's answering plug and the other the plug that is used in making connection with the called subscriber's line. When this is done the called subscriber's supervisory lamp lights and when he answers both supervisory lights go out, indicating that conversation is taking place. When either subscriber hangs up his receiver his supervisory lamp again lights to indicate to the operator that the conversation has ended and that she may clear the lines by removing the plugs. In the older systems when either subscriber again desired the attention of the operator he could before the plugs were removed from the jacks attract it by moving his receiver hook up and down, which indicated to the operator by a flashing of her supervisory light that he wished to make a recall. This method of signaling for a recall was not always effective. If the operator's attention was not directed to the supervisory light during the time of its flashing, or if the hook was "jiggled" to fast or merely depressed once, the recall signal might be missed.

Currier provided an automatic flickering recall signal system whereby one movement of the switch hook under the control of the subscriber was sufficient to start in operation certain instrumentalities which conveyed to the operator an intermittent signal continuing to flash until the operator answered. He provided an interrupter controlled by relays, which after the switch hook of a connected line had once been moved was placed in circuit and continued to flash the clearing lamp. While Currier was concerned chiefly with a recall system for the calling subscriber, since experience had demonstrated that in the great majority of cases the calling subscriber desires to signal for a recall, his invention is not limited to a mechanism for the calling end of the circuit, although the patent depicts it as such. The Smythe system, held below to anticipate, is depicted as a recall signaling system for the called rather than the calling subscriber, although the evidence clearly indicates that each of the systems here brought into conflict may be applied to either or both ends of the operating circuit. It is this distinction of application, however, which forms one basis for the appellant's contention that Smythe did not understand the problem to which Currier addressed himself and therefore failed to solve it, and which adds much to the difficulty of the problem now presented to the court.

Of the 77 claims of Currier but three (33, 34 and 46) are in controversy. Of these, claims 33 and 46 are printed in the margin.[1] Claim 34 is identical with 33 except that it specifies a "joint control" be-

[1] 33. In a telephone exchange system, calling and called subscribers' lines, a link circuit connected with the calling line, a signaling device associated with the link circuit, interrupter mechanism, a relay conditioned for operation when the link circuit is connected with a called line and operated upon the restoration of the receiver to the switch-hook by the calling subscriber, and a second relay operated upon the subsequent removal of the receiver from the switch-hook by the calling subscriber for including the interrupter mechanism in circuit with the signaling device.

46. A telephone system including a calling and a called subscriber's line, a link circuit connecting said lines, a supervisory signaling device, a plurality of relays associated with said link circuit for causing the supervisory device to operate continuously to furnish a disconnection signal and intermittently to furnish a recall signal, and operator controlled means for seizing said recall prior to disconnection of said link circuit from said calling subscriber's line.

tween the operator and calling subscriber which accomplishes the flashing recall by bringing the interrupter in circuit with the lamp.

It is necessary before making analyses of these claims in the light of Smythe to dispose of an issue of estoppel raised by the appellant. It appears that after Currier had filed his application one Clausen, an employee of Western Electric Company, a subsidiary of the American Telephone & Telegraph Company, filed four applications for patents embodying principles said to be identical with those of the Currier invention. An interference between Currier and Clausen followed. Clausen was first rejected by the examiner as being anticipated by Smythe, but after he had amended by narrowing his claims, patent No. 1,288,837 was issued to him on December 24, 1918. Upon a second interference, however, the claims granted to Clausen were given to Currier as the prior inventor. Upon appeal to the Board of Examiners in Chief and to the Commissioner of Patents, Currier's priority was sustained. It is argued from this, upon the authority of Cutler Hammer Mfg. Co. v. General Electric Co., 7 Cir., 6 F.2d 376, that since the appellees were in privity with Clausen they are now estopped from attacking the validity and novelty of the Currier patent by Clausen's pursuit of identical claims, or if not estopped, Clausen's claims and argument before the Patent Office imputed to the appellees are at least strong evidentiary support for and endorsement of Currier's claims, and that the appellees should not now be heard in support of Smythe as an anticipation because such argument is inexplicably repugnant to the position taken by the appellees in support of Clausen's application.

The Cutler Case, however, furnishes no support for invoking the doctrine of estoppel in present circumstances, and even though the court therein attached great importance to an earlier inconsistent position of the infringing defendant as pointing to validity of claims subsequently attacked, the same court in a later case appears to have receded from its ruling even to this extent, Allbright-Nell Company v. Autosteam Process Co., 7 Cir., 70 F.2d 959, for the law is clearly settled that however inconsistent an early attempt to secure a patent may be with a later challenge to its validity for want of invention, such inconsistency affords no basis for an estoppel,

nor does it preclude the court from relieving the alleged infringer from the asserted monopoly, Paramount Publix Corp. v. American Tri-Ergon Corp., 294 U.S. 464, 55 S.Ct. 449, 79 L.Ed. 997; Haughey v. Lee, 151 U.S. 282, 285, 14 S.Ct. 331, 38 L.Ed. 162, and this court has likewise so decided. McCloskey v. Toledo Pressed Steel Co., 6 Cir., 30 F.2d 12. The public is always a third party to an infringement suit, and its rights may not be waived by the conduct of alleged infringers, however repugnant to their later contentions.

The elements of Claim 33 of Currier include "in a telephone exchange system" (1) calling and called subscribers' lines, (2) a link circuit connected with the calling line, (3) a signaling device associated with the link circuit, (4) an interrupter mechanism, (5) a relay, (a) conditioned for operation when the linked circuit is connected with a called line, and (b) operated upon the restoration of the receiver to the switch hook by the calling subscriber, and (6) a second relay, (a) operated upon the subsequent removal of the receiver from the switch hook by the calling subscriber, and (b) for including the interrupter mechanism in circuit with the signaling device. The Smythe patent ante-dated Currier by eighteen years, having been granted April 26, 1904. After reciting the method by which recall signals are given in the conventional telephone system, he declares it to be his aim "to provide an improved organization of circuit and apparatus for automatically causing the display of characteristic and distinct signals" and his means consist in placing in circuit supervisory relay armatures and interrupters whereby when a subscriber after finishing his conversation desires to make a recall, a single depression of the receiver hook will bring the interrupter into operative relation to the signal and cause a flashing of the supervisory light. It must be understood that relays are electro-magnetic switches for opening or closing circuits, and interrupters what their name implies. Their function and purpose were well understood and they constitute what the District Court so aptly termed the "brick and mortar of the art."

To distinguish from Smythe the appellant attaches great importance to element 5, if indeed it is not its sole reliance. It distinguishes, it is argued, the principle of the Currier recall mechanism from that of Smythe in that the relay which controls

the recall signal is "conditioned for operation when the link circuit is connected with a called line" whereas in Smythe the relay is not so conditioned until the called subscriber has taken his receiver from the hook. Thereafter, it appears to be conceded, the mechanism in both is operated by the restoration of the receiver to the switch-hook. The answer to this argument is, first, that the distinction is without patentable importance since there is no conceivable need for a recall by the called subscriber until after he has answered the call, and secondly that the contention requires a strained construction of the phrase "conditioned for operation" and a like construction of the phrase "when the link circuit is connected with a called line." Much refinement of reasoning is devoted to demonstrating that relays in each system are conditioned for operation when the link circuit is connected, within the language of the claim and to demonstrate that the term "when" means, on the one hand, that conditioning for recall must take place at the instant of time when the link circuit is connected and, on the other, that it responds to the claim if it takes place at any interval during which the link circuit is connected.

In so crowded an art, where the need for an automatic flashing recall system was early recognized, where the instrumentalities and the manner of their organization in circuit by which it might be provided had been so fully explained and depicted by Smythe, such refinement of distinction from prior art gives scant demonstration of inventive thought, or justification for the reward of monopoly. But even were we to accept the appellant's interpretation of its claims, substantially all that Currier disclosed had been taught by Smythe. Smythe is depicted for the called end of the circuit, undoubtedly because that end furnishes greater difficulties to its application. For that purpose four signals were required, and he provided (1) a steady lamp to show that the called subscriber has not responded to the call, (2) a dark lamp to indicate that he was talking, (3) a flashing light to indicate that he was through and that the line should be cleared, and (4) a flashing light of different frequency to signal a recall. For the calling subscriber's need only three signals are required, since the calling subscriber initiates the call by removing the receiver and signal No. 1 is not required. Transposing Smythe to the calling end of the circuit, as the evidence indicates it may be, and a new use in a related environment not being invention, Weir Frog Co. v. Porter, 6 Cir., 206 F. 670, we think it may not be said that the recall mechanism is not "conditioned for operation when the link circuit is connected with a called line," and applying Currier to the called end of the circuit we think Currier may not be said to be so conditioned, for until the called subscriber answers there is no operative circuit to condition his end of the line for recall. What we have said applies with equal force to claim 34.

Much importance is attached to the fact that the Western Electric Company, affiliated with the appellees, owned the Smythe patent for many years without using it, and it is urged that this is a most convincing demonstration that Smythe failed to disclose a commercially practical system, and since it was not until Currier made his disclosure that the appellants began to install automatic flashing recall systems they applied Currier and not Smythe, thus paying tribute to the former's invention. The contention is relevant but not controlling. We have already noted the fact that in highly organized industries it may not always be economically practical or desirable to adopt even clearly recognized improvements when old practices still fairly respond to commercial needs and the useful life of existing mechanisms in which much capital has been invested has not yet been extinguished. Firestone Tire & Rubber Co. v. United States Rubber Co., 6 Cir., 79 F.2d 948, 954.

Claim 46 is clearly invalid. The advance over Smythe is that in place of a rapid flash disconnect signal Currier uses a continuous supervisory light for the same purpose. A continuous flash has been so employed before, and Currier's substitution is but a recurrence to conventional practice and does not rise to the dignity of invention, especially when the variation concerns itself only with a detail of the circuit and not with any essential principles of organization or operation.

We agree with the conclusion of the District Judge that in all that appears material Smythe completely anticipates Currier. The decree below so far as it is challenged by this appeal is affirmed.