496

**JAMES HEDDON'S SONS et al. v. AMERI-
CAN FORK & HOE CO.**

Civ. No. 20846.

District Court, N. D. Ohio, E. D.

Nov. 26, 1943.

Samuel W. Banning (of Banning & Banning), of Chicago, Ill., and A. J. Hudson, of Cleveland, Ohio, for plaintiffs.

Frank M. Slough, of Cleveland, Ohio, for defendant.

FREED, District Judge.

The plaintiffs herein charge infringement of letters patent and seek a final injunction against the defendant, an accounting, and the assessment of three-fold damages and costs.

The plaintiffs are James Heddon's Sons, a Michigan corporation, George E. Barnhart, Frank L. A. Graham and Henry L. Knoop. Heddon's Sons is the exclusive licensee of the plaintiff, Barnhart, to whom letters patent were issued on Aug. 11, 1936, for an invention in a golf club shaft. The plaintiffs, Graham and Knoop, are assignees, subject to the license agreement, of Barnhart's title and interest in the patent in question under a trust agreement dated Nov. 22, 1940.

The defendant, American Fork & Hoe Co., is an Ohio corporation, a competitor of Heddon's Sons in the manufacture and sale of golf clubs, and allegedly engaged in the manufacture and sale of golf clubs which constitute an infringement of the Barnhart patent.

The defendant denies the validity of the Barnhart patent and contends that if there is any patentable invention in the patent issued to Barnhart, that the invention had been conceived and reduced to practice by one Norman P. Vickery upon an application filed in the Patent Office on June 6, 1933, and under which application the defendant, American Fork & Hoe Co., was granted an exclusive license by Vickery.

The invention here in controversy involved a tubular, metallic golf shaft which has two tapered sections of flexion, which are separated by a bulge that extends several inches or by an abrupt region of stiffness; or otherwise described as a tubular, metallic golf club shaft which has a medially-located shoulder or bulge for the purpose of providing two separated areas of flexibility. The purpose of the invention is to increase flexibility of the metallic golf club shaft in certain selected regions.

The history of the patents involved in this litigation discloses a long and chequered career in the Patent Office.

It appears that Letters Patent No. 2,050,554 originally were issued to Barnhart on Aug. 11, 1936. In the patent granted, seven claims were allowed to the applicant.

Subsequently, Vickery copied the claims embodied in the Barnhart patent, claiming priority, and an interference was declared.

The Patent Office, after numerous hearings, and as the final phase of the Patent Office proceedings, culminating in a decision by the Court of Customs and Patent Appeals, awarded claims 2, 3 and 5 of the Barnhart patent in suit here to Barnhart, and claims 1, 4, 6 and 7 to Vickery.

In this action the plaintiffs claim the right to all seven claims despite the decisions of the Patent Office tribunals.

Claims 1 and 2 are illustrative of all the claims involved in this action and are as follows:

"1. A tubular metallic golf club shaft having a grip portion at its upper end and a tip at its lower end, said shaft having contiguous upper and lower portions of circular cross section throughout, and said upper and lower portions being connected by a portion outwardly protruding from the upper portion and providing the upper terminus of the lower portion, said lower portion tapering to a minimum diameter in the tip region.

"2. A tubular metallic golf club shaft, having a grip portion at its upper end and a tip at its lower end, said shaft being of circular cross section throughout and comprising an upper portion and a lower portion, said upper and lower portions being interconnected by a shoulder outwardly protruding from the upper portion and affording the upper terminus for the lower portion, and the lower portion immediately below the shoulder tapering therefrom to a minimum diameter in the tip region, and the minimum diameter of the lower portion being less than the minimum diameter of the upper portion in the region adjacent the shoulder."

The court has spent considerable time in reading and examining voluminous records, a large number of exhibits and depositions, and has studied briefs which were several hundreds of pages in length.

Many questions of law and fact which counsel contend are pertinent to the issues are raised in the briefs.

It is the considered judgment of this court that the primary and pivotal question is whether the golf club shafts manufactured by the plaintiffs, and above described, involve invention over other shafts manufactured under prior inventions.

To state it differently: Is the plaintiffs' patent (Barnhart patent) invalid because it involved merely mechanical skill to possibly refine prior art structures? The answer to this question is dispositive of all the issues herein involved.

There is no slide rule theory or absolute maxim which may be found in the decisions on the basis of which patentability of a devise may be determined with unqualified definiteness. The court must examine all the facts pertaining to the art asserted in the particular case and by application of general legal principles announced, decide whether novelty, utility and patentability are present.

This court views the teachings of the Barnhart patent to be the creation of a tubular metallic golf club shaft which has two tapered sections of flexion, separated by a bulge that extends several inches, or by an abrupt region of stiffness to provide flexibility or resiliency in selected areas.

Nothing can be discerned in the asserted art in the Barnhart claims which may not be found in the teachings of the Fox, Pollock, Saunders and Riordan patents of British issue, and the Brinkman patents issued by the U. S. Patent Office.

The specifications of the Fox patent [1] state: "By means of this thickening of the shaft at a part approaching the middle of its length, I give greater power to the spring action of the shaft inasmuch as the spring action commences at a point nearer to the handle than is the case in a club of the ordinary construction."

And the Fox patent claims invention for: "Improved golf club shaft having its greatest diameter at a part intermediate between the handle and the head of the club."

The specifications of the Pollock patent [2] state: "In order to enable the tubular body part to yield along its whole length or at any particular part of its length, we press the metal of the tube inwardly at diametrically opposed points, this occurring a plurality of times. * * * The tube will yield according to the spacing, depth and locality of the pressings."

And specifies for its object: "* * * to provide a metallic tubular golf shaft of tapering or uniform formation, or both, which is specially treated to increase the general efficiency of the club in use."

The Saunders patent [3] specifies a metallic golf club shaft of: "* * * steel or other metallic tubes that have a tapering ex-

[1] Fox Patent, British, No. 24,144, Accepted Dec. 7, 1911.
[2] Pollock Patent, British, No. 256,049, Accepted Aug. 5, 1926.
[3] Saunders Patent, British, No. 3288, Accepted Nov. 27, 1913.

ternal formation through the whole or part of their length," for the purpose of imparting: " * * * that degree of flexibility or 'spring' which is essential to obtaining the best result in play."

The specifications of the Riordan patent [4] provide: "I provide the club with what I call a wrist; at the point where the club balances; that is to say, at this part the flexibility of the shaft in a direction at right angles or approximately at right angles to the face of the club is greater than in any other direction."—and that the cross-section of the shaft at the wrist: " * * * may be oval, eliptical or rectangular with rounded ends * * *."

The application for the Brinkman patent [5] states:

"Metal tubes form light, durable and strong shafts for golf clubs but heretofore such shafts have been of tubes of a uniformly tapering diameter and have not had the balance, flexibility at desired points, etc., all of which are summed up in the term 'feel' of the club.

"It is the main object of the present invention to provide tubular metal shafts for golf clubs which shall have the desired 'feel'.

"This is accomplished by suitably varying the taper of the tube diameter and the thickness of the tube wall may be made such, either uniform or varying in thickness at different points, as will contribute to the desired results * * *."

And in describing Fig. 4, illustrating the invention: "This affords a means for decreasing the size of the shaft adjacent the head or whenever desired so as to give suitable flexibility at desired points of the shaft."

The long felt want, if any existed, for a golf club shaft which possessed certain regions of flexibility was fulfilled by the shafts made under the enumerated prior patents. The abrupt bulge or shoulder added by Barnhart does not demonstrate such inventive talent as to entitle the maker to a monopoly. It is understandable that men who devote their ability and energy for a long period of time to improve golf clubs are, or become, skilled and proficient in making them, but it does not follow that each change or improvement made by them rises to the dignity of invention.

As was stated by Mr. Chief Justice Stone in Altoona Theatres v. Tri-Ergon Corp., 294 U.S. 477, at page 486, 55 S.Ct. 455, 458, 79 L.Ed. 1005:

"An improvement to an apparatus or method, to be patentable, must be the result of invention, and not the mere exercise of the skill of the calling or an advance plainly indicated by the prior art. Electric Cable Joint Co. v. Brooklyn Edison Co., 292 U.S. 69, 79, 80, 54 S.Ct. 586, 78 L.Ed. 1131. * * *

"However skillfully this was done, and even though there was produced a machine of greater precision and a higher degree of motion constancy, and hence one more useful in the art, it was still the product of skill, not of invention." (Cases cited and see also Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58).

This opinion is reached with full realization of the rule announced in Carson v. American Smelting & Refining, 9 Cir., 4 F.2d 463, 465, that "American patent is not anticipated by a foreign patent, unless the latter exhibits the invention in such full, clear, and exact terms as to enable any person skilled in the art to practice it without the necessity of making experiments."

The plaintiffs vigorously assert that the defendant, because of its previous stand and contentions in the Patent Office, is now estopped to deny the utility, novelty and patentability of the invention in question.

This court finds no support for the claim of estoppel in view of the language of the United States Supreme Court in Haughey v. Lee, 151 U.S. 282, at page 285, 14 S.Ct. 331, at page 332, 38 L.Ed. 162, in which Mr. Justice Shiras said: "There is no merit in the proposition made in the second assignment of error, that defendants are estopped from asserting that there is no patentable novelty in plaintiff's invention by their conduct in seeking to procure, through one of their employes, a patent for substantially the same invention. Whether or not there is any inconsistency in trying at one time, to get a patent for a supposed invention, and in afterwards alleging, as against a rival successful in obtaining a patent, that there is no novelty in the invention, it certainly cannot be said

[4] Riordan Patent, British, No. 10,431, Accepted 1906.

[5] Brinkman Patent, U.S., No. 1,653,428, Filed June 24, 1924.

to constitute an estoppel. Besides, the defense of want of patentable invention in a patent operates not merely to exonerate the defendant, but to relieve the public from an asserted monopoly, and the court cannot be prevented from so declaring by the fact that the defendant had ineffectually sought to secure the monopoly for himself."

And in this Circuit, Judge Simons, in Kellogg Switchboard & Supply Co. v. Michigan Bell Tel. Co., 99 F.2d 203, at page 205, reiterated the rule: " * * * for the law is clearly settled that however inconsistent an early attempt to secure a patent may be with a later challenge to its validity for want of invention, such inconsistency affords no basis for an estoppel, nor does it preclude the court from relieving the alleged infringer from the asserted monopoly. Paramount Publix Corp. v. American Tri-Ergon Corp., 294 U.S. 464, 55 S.Ct. 449, 79 L.Ed. 997; Haughey v. Lee, 151 U.S. 282, 285, 14 S. Ct. 331, 38 L.Ed. 162, and this court has likewise so decided. McCloskey v. Toledo Pressed Steel Co., 6 Cir., 30 F.2d 12. The public is always a third party to an infringement suit, and its rights may not be waived by the conduct of alleged infringers, however repugnant to their later contentions."

In accordance with the above findings, the Bill of Complaint will be dismissed.